IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANGEL PAUL MORALES,                    )
                                       )
              Plaintiff,               )
                                       )
     -vs-                              )          Civil Action No. 12-1871
                                       )
CAROLYN W. COLVIN,[1]                  )
COMMISSIONER OF SOCIAL SECURITY,       )
                                       )
              Defendant.               )

AMBROSE, Senior District Judge.

## OPINION
### and
## ORDER OF COURT

### SYNOPSIS

Plaintiff has filed a Motion for Summary Judgment relating to the denial of his claim for

Supplemental Security Income (Docket No 9). Plaintiff contends that the denial is not supported

by substantial evidence of record and is contrary to law.   The Defendant Commissioner of Social

Security has filed a Cross Motion for Summary Judgment (Docket No. 13), urging that the denial

of benefits be affirmed. After careful consideration of the parties' submissions, and based upon

the reasons set forth in my Opinion, the Defendant's Motion for Summary Judgment (Docket No.

13) is granted and the Plaintiff's Motion for Summary Judgment (Docket No. 9) is denied.

## I.  BACKGROUND

Plaintiff Angel Morales ("Morales") was born in 1989, which characterizes him as a

"younger person" on the date of the Administrative Law Judge's decision. (R. 125). See C.F.R. §

416.963(c).   He was diagnosed with attention deficit hyperactivity disorder at the age of 7 and

was placed on Ritalin. (R. 201).   He graduated from high school but attended learning support

---

[1] Carolyn W. Colvin became acting Commissioner of Social Security on February 14, 2013, replacing
Michael J. Astrue.

1

classes. (R. 202). He has held a number of jobs since graduating, generally in the fields of fast food and landscaping. (R. 38-40, 202). The positions were short lived and Morales either quit them or was fired because of problems getting along with others. Morales has a strained relationship with his mother. (R. 46, 186-193). At the time of the hearing, Morales lived independently, maintained appropriate personal hygiene, washed dishes and vacuumed, occasionally shopped and cooked, maintained a driver's license, and, when finances permitted, went out to movies or dinner with friends. (R. 43). He reported spending free time playing video games and watching television. (R. 43).

On January 6, 2010, Morales saw Dr. Lindsey Groves, Psy. D., for a psychological examination. (R. 201-211). Dr. Groves diagnosed Morales with major depression, attention deficit hyperactivity disorder and impulse control disorder. (R. 203). She described him as having borderline intellectual functioning with a Global Assessment of Functioning (GAF) score of 55. (R. 203). Groves reported that Morales had a full scale IQ of 82, which placed him in the borderline to low-average range of functioning. (R. 204). He achieved a verbal IQ of 81 and a performance IQ of 94. (R. 204). Groves indicated that Morales had only "slight" impairment of his ability to understand, remember and carry out, short, simple instructions, but "marked" impairment of his ability to carry out detailed instructions and make judgments on simple work-related decisions. (R. 208). Dr. Groves referenced Morales's "low IQ" in support of these findings.

Dr. Groves also opined that Morales's ability to interact appropriately with the public and with his supervisors was "slightly" impaired. (R. 208). His ability to interact with co-workers, to respond appropriately to work pressures in a usual work setting and to respond to changes in a routine setting, were "moderately" impaired. (R. 208).[2] Dr. Groves explained that Morales's "low

---

[2] The Medical Source Statement defines "slight" as "[t]here is some mild limitations in the area, but the individual can generally function well." "Moderate" is defined as "[t]here is moderate limitation in this area but the individual is still able to function satisfactorily." "Marked" is defined as "[t]here is serious limitation in this area. The ability to function is severely limited but not precluded." (R. 208).

frustration tolerance" and "depression" supported her findings in this regard. (R. 208).

Dr. Douglas Schiller, Pd. D., a state agency consultant, reviewed Morales's medical records.  He found the records to establish medically determinable impairments of attention deficit hyperactivity disorder, depression and impulse control disorder, but found that such disorders did not satisfy diagnostic criteria so as to merit a finding of disability. (R. 216-222).  Dr. Schiller observed that Morales had only mild restrictions regarding activities of daily living and moderate restrictions with respect to difficulties in maintaining social functioning and concentration, persistence and pace. (R. 225).

Dr. Anthony Galidieri, Ph. D., also reviewed the medical records and provided a statement. (R. 228-235).  Dr. Galidieri described Morales as having mild-to-moderate restrictions with respect to activities of daily living, difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence and pace. (R. 229).  Galidieri referenced Morales's IQ scores and lack of history for treatment of depression as well as his lack of medication in support of his conclusion. (R. 229). Dr. Galidieri opined that Morales would be able to perform simple routine work in a competitive work setting, and that he had no limitations in his ability to understand, remember and carry out simple instructions. (R. 232-33).  Galidieri believed that Morales had mild impairment of the ability to make judgments with respect to simple work-related decisions and mild-to-moderate impairment of the ability to understand and remember complex instructions. (R. 233).  Galidieri described Morales as being moderately to markedly impaired, respectively, in the ability to carry out complex instructions and the ability to make judgments on complex work-related decisions. (R. 233).  Galidieri cited to Morales's school records and Dr. Grove's records in support of his findings.

The record contains some "Progress Notes" from Kreinbrook Psychological Services. Morales was referred there in May of 2010 but did not attend the session. (R. 241).  He attended his first session in January of 2011. The records indicate that Morales's therapist recommended

weekly appointments. (R. 241).   It appears that Morales attended four sessions. (R. 238-241).

## II.  <u>LEGAL ANALYSIS</u>

### A.  <u>STANDARD OF REVIEW</u>

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision.   *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989).   Substantial evidence has been defined as "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate."   *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence.   Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.*   The Commissioner's findings of fact, if supported by substantial evidence, are conclusive.   42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979).   A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record.   *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole.   *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he/she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months.   42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,*

4

786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

### B.   WHETHER THE ALJ IMPROPERLY DISREGARDED THE MEDICAL OPINION OFFERED BY LINDSEY GROVES

Morales argues that the ALJ improperly disregarded opinion evidence from Lindsey Groves, whom he characterizes as a "treating physician." According to Morales, the ALJ erroneously found Dr. Groves' opinion to be outweighed by the medical evidence offered by Dr. Schiller and Dr. Galdieri. (*See* Docket No. [10], p. 5). Morales contends that the opinions offered by treating sources are entitled to more weight than the opinions offered by non-treating sources.

The amount of weight accorded to medical opinions is well-established. Generally, the opinions of a claimant's treating physician are entitled to substantial and, at times, even controlling weight. 20 C.F.R. §§ 404.927, 416.927(c)(1). To be entitled to controlling weight, however, the treating physician's opinion must be well supported by medical techniques and consistent with the other substantial evidence of record. *See Fragnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). To determine the weight of a treating physician's opinion, the ALJ looks at a number of factors, including consistency, length of treatment, corroborating evidence, and supportability. 20 C.F.R. §§ 404.927, 416.927(c)(1). As the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id*. Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v.Comm'r of Social Security Admin*., No.10-2517, 2010 WL 5078238, at *5 (3d Cir. Dec. 14, 2010). Although the ALJ may choose whom to credit when faced with a conflict, he / she "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r of Soc. Security*, 577 F.3d 500, 505 (3d Cir. 2009).

Here, contrary to Morales's assertions, the ALJ accorded appropriate weight to Dr. Groves's findings. For instance, the ALJ correctly noted that Dr. Groves was a "consultative psychological examiner." (R. 18). She examined Morales on a single occasion. Her opinion does not reflect familiarity with a patient over a considerable length of treatment.

Additionally, the ALJ observed Dr. Groves' notations that Morales had never been hospitalized for mental health reasons and that he was not taking any psychotropic medications at

the time of the examination. (R. 18).   The ALJ also recognized that Dr. Groves stated that Morales spoke clearly, had adequate hygiene, was cooperative during the interview, displayed goal-directed thoughts, denied perceptual disturbances, was oriented to time, place and person, struggled recalling three digits backward but could name up to six digits forward, and had achieved a full scale IQ of 82, a verbal IQ of 81 and a performance IQ of 94. (R. 18).   Indeed, the ALJ stated that:

> [t]he undersigned affords **great weight** to Dr. Groves' findings and opinions, **with the exception** of her opinions as to interaction with the public and co-workers, which the undersigned affords lesser weight in viewing the evidence in a light most favorable to the claimant.

(R. 18) (emphasis added).   The ALJ explained that:

> Dr. Groves' foregoing opinions are supported by the medical evidence and the claimant's course of treatment as set forth above demonstrating only sporadic mental health treatment, are consistent in part with Dr. Schiller's below-discussed State agency opinions that the claimant's mental impairments caused no greater than moderate functional limitations, and are consistent substantially with Dr. Galdieri's below-described consultative opinions identifying mild to moderate functional limitations in social functioning and in intellectual functioning.   By limiting the claimant to simple, unskilled work, the residual functional capacity specifically includes Dr. Groves' marked limitations with respect to understanding, remembering, and carrying out detailed instructions.

(R. 18).   Thus, contrary to Morales' current argument, the ALJ did, in fact, accord the vast majority of Dr. Groves' findings substantial weight.

The only part of Dr. Groves' opinion which the ALJ rejected, was that Morales had marked limitations making judgments with respect to simple, work-related decisions. (R. 19).   A review of the record convinces me that her rejection, in this regard, is supported by substantial medical evidence.   The ALJ explained that Dr. Groves' findings in this regard were internally inconsistent with her other findings, namely, those related to intelligence testing, and the espoused slight limitations on understanding, remembering and carrying out short, simple instructions. (R. 19). The ALJ further supported her rejection of this portion of Dr. Groves' conclusion by references to

Dr. Schiller's and Dr. Galdieri's findings. (R. 19). According to the ALJ, Dr. Schiller noted that Morales "had mild restriction in the activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace." (R. 19). The ALJ also referenced Dr. Galdieri's findings that Morales' records showed no extensive mental health treatment for depression, nor any evidence of prescriptions for psychotropic medication. Additionally, Dr. Galdieri had noted that Morales's educational records did not reflect low intellectual achievement. (R. 19). The ALJ found both psychological consultants to be acceptable medical sources; she found their opinions regarding impairment to be internally consistent and to be consistent both with each other and with the part of Dr. Groves' report that she found persuasive. (R. 19). I find no error by the ALJ in this regard.

## C. WHETHER THE ALJ PROPERLY CONSIDERED THE OPINION OF A LAY WITNESS

Alice Nava, Morales's mother, did not attend the hearing. Rather, she submitted a written statement dated April 18, 2011. (R. 186-93). In it she detailed her relationship with Morales and the struggles he has, as she perceives them to be. Morales contends that the ALJ "implicitly rejected" Ms. Nava's statement because the ALJ found Morales to be "no more than moderate[ly] impaired with respect to maintaining social functioning. [Docket No. 10, p. 11]. According to Morales, a fair reading of Ms. Nava's submission would have required the ALJ to find him to have "not just marked but extreme difficulty in maintaining social functioning." [Docket No. 10, p. 11]. Morales faults the ALJ for failing to explain her rejection of Ms. Nava's statement.

The ALJ clearly considered Ms. Nava's submission. She noted that Ms. Nava's allegations were similar in nature to Morales's. For instance, the ALJ recognized Nava's contentions that Morales had problems controlling his temper and anger and difficulties following rules and directions. (R. 17). She observed Nava's comments that Morales had been involved in physical altercations and had destroyed property when angry. (R. 17). The ALJ referenced Nava's

concerns that Morales had been taken advantage of by others and that she believed that he is depressed, spends time alone and is suspicious of others because of such experiences. (R. 17).

The ALJ explained her rejection of Ms. Nava's submissions. She stated, "[i]n arriving at a residual functional capacity with respect to claimant's limitations caused by his impairments, the undersigned gives minimal weight to opinions issued by the claimant's mother, Ms. Nava, to the extent that the claimant's mother offered opinions that are inconsistent with the residual functional capacity (Exhibit 11E). Although Ms. Nava provided a detailed description of the claimant's difficulties, she is not a medical source, and her observations are inconsistent with the above-discussed psychological opinions." (R. 21). Contrary to Morales's suggestions, the ALJ did provide an explanation for her rejection of Nava's submission. Nava was not a medical source. Further, as documented above, Nava's suggestions that Morales's impairments were totally disabling are inconsistent with the findings of the medical professionals. I find no error in the ALJ's decision in this regard.

### D. WHETHER THE ALJ PROPERLY EXPLAINED HER ASSESSMENT OF MORALES'S RESIDUAL FUNCTIONAL CAPACITY

Finally, Morales contends that the ALJ failed to adequately explain her finding with respect to his residual functional capacity. The ALJ found that Morales "has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: the claimant is limited to jobs involving understanding, remembering, and carrying out only simple instructions, making few, if any, work-related decisions, involving no interaction with the general public or co-workers, and only occasional interaction with supervisors." (R. 16). Contrary to Morales's suggestions, the ALJ's findings in this regard are supported by substantial evidence of record.

First, the ALJ considered Morales's own allegations of disability as well as the written statement submitted by his mother. (R. 17). Yet she also noted that Morales's mental health

treatment was sporadic. (R. 17).   She commented upon Morales's failure to attend scheduled appointments at Kreinbrook Psychological Services and upon the fact that his therapist had not indicated that he suffered from serious or greater symptoms or limitations in social or occupational functioning. (R. 17-18).   The ALJ reported on the lack of medical evidence that Morales needed psychiatric specialist treatment, that he regularly took psychotropic medication or that he had any inpatient hospital treatment for mental illness. (R. 18). The ALJ also referenced all the medical findings issued by Dr. Groves, Dr. Schiller and Dr. Galdieri that are referenced above. (R. 18-19). The ALJ noted that, during the hearing, Morales was able to respond to all questions asked in an appropriate manner and did not engage in any inappropriate social behavior. (R. 20).   She found him to relate to his attorney appropriately, and described him as polite and respectful to all in the hearing room. (R. 20).

Based upon a review of the entire record as well as a review of the ALJ's determination, I find that the ALJ's analysis that Morales had the RFC to perform a full range of work at all exertional levels, but limited to jobs involving understanding, remembering, and carrying out only simple instructions, making few, if any, work-related decisions, involving no interaction with the general public or go-workers and only occasional interaction with supervisors, to be supported by sufficient evidence.   Thus, I find no error by the ALJ.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANGEL PAUL MORALES,                    )
                                       )
            Plaintiff,                 )
                                       )
      -vs-                             )          Civil Action No. 12-1871
                                       )
CAROLYN W. COLVIN,[3]                  )
COMMISSIONER OF SOCIAL SECURITY,       )
                                       )
            Defendant.                 )

AMBROSE, Senior District Judge.


## ORDER OF COURT

THEREFORE, this 22nd day of January, 2014, it is ordered that the decision of the ALJ is affirmed and Plaintiff's Motion for Summary Judgment (Docket No. 9) is denied and Defendant's Motion for Summary Judgment (Docket No. 13) is granted.

                              BY THE COURT:

                              s/   Donetta W. Ambrose
                              Donetta W. Ambrose
                              United States Senior District Judge

---

[3] Carolyn W. Colvin became acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue.

11